IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NEIL T. WILLIAMS**,

    Plaintiff,                                        No. CV 09-1278-MO

    v.                                               OPINION AND ORDER

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**,

    Defendant.

**MOSMAN, J.**,

    Plaintiff Neil T. Williams challenges the Commissioner's decision denying his claims for Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons stated below, I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

    On July 10, 2006, Mr. Williams applied for Title II Disability Insurance Benefits ("DIB").[1] His application was initially denied on October 13, 2006, and upon reconsideration on December 6, 2006. AR 8. An administrative law judge ("ALJ") held a hearing on February 18, 2009. *Id.* On May 20, 2009, the ALJ issued his decision denying Mr. Williams's application. AR 18. The Appeals Council denied review on August 26, 2009, making the ALJ's decision the final decision of the Commissioner. AR 1. Mr. Williams timely appealed to this Court October 30, 2009. (Compl. (#2) 2.)

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on May 12, 2010.

1

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920 (establishing the five-step evaluative process for DIB and SSI claims). At Step One the ALJ found that Mr. Williams has not engaged in substantial gainful activity since the alleged onset date. AR 10. At Step Two the ALJ found that Mr. Williams suffered from dystonia, a mood disorder, and an anxiety disorder. *Id*. Continuing to Step Three, the ALJ found that the combination of impairments does not meet or equal a disorder listed in the Commissioner's regulations. AR 11.

The ALJ next evaluated Mr. Williams's residual functioning capacity ("RFC"), finding that he could perform a limited range of medium exertional work, including routine, repetitive tasks, which permitted the use of notes to assist in remembering instructions. AR 12. The ALJ further found that Mr. Williams could sit eight hours a day, stand and walk at least six hours a day, and lift fifty pounds at maximum, twenty-five pounds frequently, and less than twenty-five pounds constantly. *Id*. The ALJ also determined that Mr. Williams's manipulation with his dominant right hand was limited to gross handling and grasping, that he could feel and keyboard occasionally, and that use of his nondominant left hand was unlimited. *Id*.

The ALJ continued to Step Five, relying upon testimony from the vocational expert to find that Mr. Williams could work as a laundry worker, housekeeper, and sorter, and that these jobs existed in significant numbers in the national economy. AR 17. Based on the Step Four and Step Five findings, the ALJ denied benefits. AR 18.

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). This is a highly deferential standard of review: "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882. Finally, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## DISCUSSION

Mr. Williams raises three issues for review: first, Mr. Williams contends that the ALJ improperly rejected lay testimony; second, the ALJ improperly rejected medical testimony; and finally, the ALJ's findings are not supported by the record. (Pl.'s Br. (#17) 1.)

**I.    The ALJ Properly Rejected Lay Testimony**

Mr. Williams argues that the ALJ erroneously discounted the lay testimony of his sibling, R.C. Williams. (Pl.'s Br. (#17) 6.) First, Mr. Williams contends that the ALJ erred in finding that

3

R.C. Williams's testimony contained no evidence of a lack of ability to perform simple tasks because such evidence did actually exist. (Pl.'s Reply (#23) 1.) Second, Mr. Williams argues that the ALJ erred in not providing reasons germane to the testimony when discounting it. (*Id*. at 2.) Mr. Williams's arguments are meritless.

The ALJ has a duty to consider lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Id.* at 19. The ALJ may not reject such testimony without comment, but she may reject lay testimony inconsistent with medical evidence. *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, she must give reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ discounted R.C. Williams's testimony because it was inconsistent and demonstrated that Mr. Williams could, in fact, perform simple tasks. Although R.C Williams's testimony included the statement that Mr. Williams had difficulty performing basic tasks, the entirety of his testimony indicates otherwise. AR 16. Among other things, the ALJ noted that R.C. Williams testified that Mr. Williams temporarily—albeit unsuccessfully—operated his own business, participated in the operation of his brother's business, and earned A's and B's while completing community college classes in small business management and sculpture. AR 16–17. R.C. Williams's assertion that Mr. Williams had difficulty performing simple tasks was, therefore, conclusory and inconsistent with more persuasive specific factual allegations.

Mr. Williams, however, maintains that the ALJ erred because there is, allegedly, no "logical connection between Plaintiff's ability to attend community college and the inability to perform simple physical tasks." (Pl.'s Reply (#23) 2.) This argument is meritless. On the one hand, Mr. Williams's contention suggests that earning A's and B's in college is something less than simple. On the other hand, this argument entirely neglects that one of the classes Mr. Williams took was sculpture—the art of carving, modeling, and welding hard materials. *Merriam-Webster's Collegiate Dictionary* 1118 (11th ed. 2003). Although the ALJ identified both Mr. Williams's business ventures and his performance at community college as reasons for discounting R.C. Williams's testimony, one germane reason alone is sufficient to discredit statements by lay witnesses. *Valentine*, 574 F.3d at 694. Mr. Williams's argument, therefore, fails.

## II.    The ALJ Fairly and Fully Developed the Record

Mr. Williams next argues that the ALJ failed to fully and fairly develop the record because neither the ALJ nor Mr. Williams's hearing counsel obtained supplemental medical records. (Pl.'s Br. (#17) 8.) Specifically, Mr. Williams complains that medical expert Dr. McDevitt required additional records in order to determine when Mr. Williams was prescribed Klonopin and, consequently, could be considered disabled. (*Id.*)

The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). This duty exists "even when the claimant is represented by counsel." *Id.* (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). When important medical evidence is incomplete, the ALJ has a duty to contact the medical provider for more information. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). This duty is, however, complimented

by the Plaintiff's duty to "furnish medical and other evidence that [can be used] to reach conclusions about [his] medical impairment(s) . . . and its effect on [his] ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). In order to meet their burden to prove disability, plaintiffs must bring to the Commissioner's attention everything that shows that they are blind or disabled. 20 C.F.R. § 404.1512(a), (c).

While the Commissioner concedes that Dr. McDevitt wanted to review the missing records, Mr. Williams's hearing counsel promised but failed to supply the records to the ALJ. On February 18, 2009, Mr. Williams's hearing counsel assured the ALJ, "I'll give you the OHSU records for those ten years, and I'll also give you some declarations from people who knew him during that relevant time period." AR 135. As a result, the Commissioner correctly argues that Mr. Williams's claim that the ALJ did not fulfill her duty to develop the record is misplaced. When a party "has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). "The invited error doctrine holds that '[O]ne may not complain on review of errors below for which he is responsible'." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (quoting *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336–37 (9th Cir. 1985)); *see also Johnson v. Immigration & Naturalization Serv.*, 971 F.2d 340, 343–44 (9th Cir. 1992) (applying invited error doctrine in context of review of administrative decision). Because Mr. Williams's hearing counsel promised but failed to provide the disputed documents, his argument that the ALJ failed to fully and fairly develop the record fails.

**III.    Substantial Evidence Supports the ALJ's RFC Assessment and Vocational Hypothetical Question**

Mr. Williams's final argument contends that the ALJ erred by not including all of Mr. Williams's limitations in the residual functional capacity ("RFC"). Specifically, Mr. Williams complains, first, that his brother's testimony concerning his physical limitations was erroneously excluded and, second, that the ALJ impermissibly substituted her own judgment for that of the medical experts. (Pl.'s Br. (#17) 8–9.)

A claimant's RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." 61 Fed. Reg. 34474–01 (July 2, 1996). RFC is the most a person can do in spite of limitations or restrictions. *Id.* "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Additionally, hypothetical questions posed to a vocational expert ("VE") must include all limitations and restrictions of the particular claimant, including pain and inability to lift certain amounts of weight. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). The ALJ must include all limitations supported by substantial evidence in her hypothetical question to the VE, but may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

Here, the ALJ assessed Mr. Williams with the RFC to perform a limited range of medium exertional work, including routine, repetitive tasks, which permitted the use of notes to assist in remembering instructions. AR 12. The ALJ further found that Mr. Williams could sit eight hours a day, stand and walk at least six hours a day, and lift fifty pounds at maximum, twenty-five

pounds frequently, and less than twenty-five pounds constantly. *Id*. The ALJ also determined that Mr. Williams's manipulation with his dominant right hand was limited to gross handling and grasping, that he could feel and keyboard occasionally, and that use of his nondominant left hand was unlimited. *Id*.

The crux of Mr. Williams's objection is that the ALJ failed to credit all of his limitations by erroneously excluding relevant evidence and, therefore, proposing an incomplete hypothetical question to the VE at step five of the sequential evaluation. This argument is, however, unsupported by the record. As discussed above, R.C. Williams's testimony was properly discounted by the ALJ as inconsistent and conclusory. The ALJ correctly excluded these limitations from her hypothetical question to the VE because it conflicted with more persuasive and specific factual allegations, which demonstrated that Mr. Williams could in fact perform simple tasks. The uncontested facts that Mr. Williams went back to college, earned A's and B's, and excelled in sculpting are particularly salient. R.C. Williams's testimony was, as a result, properly excluded.

Mr. Williams further contends that the ALJ impermissibly substituted her own judgment for that of the medical experts by "independently reviewing and interpreting the medical reports." (Pl.'s Br. (#17) 9.) In support of this contention, Mr. Williams cites *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988) for the proposition that this violates "the standard procedure." (Pl.'s Br. (#17) 10.) Mr. Williams's argument is critically mistaken. In *Burkhart* the Ninth Circuit chastised an ALJ for improperly serving as his own VE, which is not at issue here. Nonetheless, Mr. Williams urges the court to apply *Burkhart's* reasoning because it appears "reasonable to apply [it] in the present case." *Id*. It would, however, be unreasonable to do so. On the one hand, Mr. Williams objects that the ALJ assumed the role of a medical expert, not a

vocational expert. These roles are fundamentally different. *See, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (discussing the role of the VE); *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (discussing the role of the medical expert). On the other hand, independently reviewing and interpreting medical reports is precisely the ALJ's function. 20 C.F.R. § 404.1527(e).  Although the ALJ may not wholly disregard the medical expert's opinion, the ALJ need not accept the medical expert's ultimate determination of the claimant's disability. *See id.* ("Medical source opinions on issues reserved to the Commissioner [include] [o]pinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ properly followed this rule. Although Dr. McDevitt testified that Mr. Williams had been unproductive since 1996 and was, therefore, disabled, the ALJ considered Dr. McDevitt's testimony but ultimately rejected his conclusion. AR 11. In the ALJ's own words, Dr. McDevitt's conclusion was inconsistent with both Mr. Williams's medical records and other testimony. *Id*. Mr. Williams's contention that the ALJ acted as her own medical expert is, therefore, unfounded.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered AFFIRMING the decision of the Commissioner of Social Security.

IT IS SO ORDERED.

DATED this __21__ day of March, 2011.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court